IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JONATHAN TORRES,**

          **Petitioner,**

v.                                           **CRIMINAL ACTION NO. 4:23-CR-39**
                                              **CIVIL ACTION NO. 4:24-CV-109**

**UNITED STATES OF AMERICA,**

          **Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Jonathan Torres's ("Petitioner") Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to Title 28, United States Code, Section 2255 ("§ 2255 Motion"). ECF No. 64 ("Pet'r's Mot."). The Government opposed the Motion. ECF No. 72 ("Resp. Opp'n"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's Motion is **DENIED.**

**I. FACTUAL BACKGROUND**

According to Petitioner's Presentence Investigation Report ("PSR"), starting in October 2022, Homeland Security Investigations ("HSI") began investigating individuals involved in the distribution of controlled substances in the Hampton Roads area, one of whom was identified as Petitioner. Presentence Investigation Report ¶ 8(1), ECF No. 44 ("PSR"). On January 18, 2023, agents executed search warrants on Petitioner's person, residence, and storage unit. *Id.* ¶ 8(2). Law enforcement detained Petitioner as he left his storage unit. *Id.* ¶ 8(3). After being advised of his *Miranda* rights, Petitioner informed investigators that "all of his drugs" were in his storage unit and his keys would open the locks. *Id.* Investigators used Petitioner's key to gain entry to the

1

storage unit, where they seized a large amount of crystal methamphetamine, powder cocaine, powder fentanyl, and fentanyl pressed pills. *Id.* ¶¶ 8(3)–(4). Petitioner admitted to possessing these controlled substances for the purpose of distributing them for financial gain. *Id.* ¶ 8(4). All controlled substances were submitted for analysis. *Id.* ¶ 22. Lab analysis confirmed the methamphetamine was correctly identified and deemed to be an average purity of 97.8% and an initial weight of over 200 grams. *Id.* ¶ 22(5). During execution of the search warrant at Petitioner's residence, police recovered a Glock firearm. *Id.* ¶ 8(5). Petitioner was aware of his status as a felon, and he knew he was prohibited from possessing firearms. *Id.*

On March 2, 2023, Petitioner was named in a Criminal Complaint charging him with Possession with Intent to Distribute Crystal Methamphetamine, in violation of 21 U.S.C. § 841(a)(1). ECF No. 1. A Criminal Information was filed on April 14, 2023, charging Petitioner with Possession with Intent to Distribute Crystal Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(b) (Count One), and Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Two). ECF No. 17. An Amended Information was filed on May 1, 2023, to correct an error in the original Criminal Information. ECF No. 21. On the same day, Petitioner waived indictment and pled guilty to Counts One and Two of the Amended Information. ECF Nos. 25, 26.

In his PSR, Petitioner reported no physical or mental health issues. *Id.* ¶¶ 67–70. However, Petitioner reported having substance abuse issues, including the frequent use and overconsumption of alcohol and marijuana, as well as other sporadic illegal drug use. *Id.* ¶¶ 71–74. The PSR assessed Petitioner with a total offense level of 33, a criminal history category of III, and a recommended guideline range of 210 to 262 months on Count One and a statutory guideline range of 0 to 15 years on Count Two. *Id.* ¶¶ 86–87. Prior to sentencing, both Petitioner and the Government

objected to Petitioner being attributed with the drug weights set forth in ¶ 20 of the PSR, which included 4 kilograms of cocaine and 4 kilograms of fentanyl. *Id.* ¶ 20; Michael P. Jones Affidavit at 2, ECF No. 71 ("Jones Aff."). Petitioner contended (and the Government agreed) that these drug weights should not be held against him, as he provided the information and should be considered protected. Resp. Opp'n at 3. At sentencing, this Court granted Petitioner's objection, and the converted drug weight was reduced to 6,015 kilograms, resulting in a base offense level of 32, a total offense level of 33, and an advisory guideline range of 168 to 210 months on Count One. *Id.*; Jones Aff. at 2.

On September 6, 2023, Petitioner was sentenced to 210 months' imprisonment followed by 4 years of supervised release on Count One, and 180 months' imprisonment followed by 3 years of supervised release on Count Two, with each sentence to be served concurrently. ECF Nos. 40, 42. Petitioner is incarcerated at FCI Hazelton Medium. Pet'rs Mot. at 1.

On November 27, 2023, Petitioner appealed. ECF No. 49. On July 30, 2024, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") dismissed Petitioner's appeal. ECF No. 60. Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 on September 3, 2024. On September 6, 2024, this Court ordered the Government to respond to Petitioner's Motion. ECF No. 65. On September 23, 2024, this Court ordered Attorney Michael P. Jones to provide an affidavit in response to Petitioner's Motion. ECF No. 67. On November 18, 2024, the Government filed its Response in Opposition. ECF No. 72.

## II. LEGAL STANDARD

The Fourth Circuit recognizes that a *pro se* petitioner is entitled to have his petition and asserted issues construed liberally, because a *pro se* petitioner is held to less stringent standards than an attorney drafting such complaints. *Gordon v. Leeke*, 574 F.2d 1147, 1151–52 (4th Cir.

1978), *cert. denied*, 439 U.S. 970 (1978).

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

When deciding a § 2255 motion, the Court must promptly grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *See United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains;" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," meaning the "movant must show actual innocence by clear and convincing evidence." *Id.* at 492– 93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to his [or her] actual and substantial disadvantage, infecting his [or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct

4

appeal and constitute sufficient cause to review a procedurally defaulted claim. *See United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493–94.

### B. Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when the "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient ("performance prong"). *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as counsel as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show the deficient performance prejudiced the defense ("prejudice prong"). *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court

defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

### III. DISCUSSION

In his § 2255 Motion, Petitioner raises two grounds for relief. First, Petitioner asserts that he is entitled to relief because he received ineffective assistance of counsel from Attorney Michael P. Jones. Pet'r's Mot. at 4–5; Resp. Opp'n at 7. Second, Petitioner asserts that this Court lacked the requisite jurisdiction to convict him of violating 18 U.S.C. § 922(g)(1). Pet'rs Mot. at 11; Resp. Opp'n at 15.

#### A. Ineffective Assistance of Counsel

Petitioner was represented by Attorney Michael P. Jones. Petitioner asserts his Ineffective Assistance of Counsel claim based on trial counsel's failure to: (1) investigate the purity and weight of the methamphetamine found in his possession, (2) seek withdrawal of his guilty plea, and (3) raise a constitutional claim as to the felon in possession of firearm charge. Pet'r's Mot. at 4, 6, 8–10; Resp. Opp'n at 7. Despite Petitioner's affirmations that he was entering a guilty plea freely and voluntarily, Petitioner now claims that but for counsel's failures to address his concerns, he would not have pled guilty. *See* ECF No. 25; Pet'r's Mot. at 7.

##### i. *Failure to Investigate or Challenge the Purity and Weight of the Methamphetamine*

Petitioner claims counsel was ineffective for failing to investigate or challenge the drug weight and purity of the methamphetamine Petitioner was charged with possessing. Pet'r's Mot. at 4, 6. Petitioner alleges that he "made desperate attempts" to have Attorney Jones "clarify" the exact drug weight and purity the Government accused him of being responsible for in his

6

indictment and to compare it to the quantity alleged in the criminal complaint. *Id.* at 6. Petitioner further alleges that Attorney Jones "would not clarify" this information and told Petitioner to "just plead guilty." *Id.*

Petitioner does not point to any basis upon which counsel could have challenged the drug weight and purity and makes no claim as to what the appropriate drug weight and purity should have been. It appears Petitioner is claiming he lacked clarity on the drug quantity being charged and was pressured into pleading guilty without clarification of this information. Petitioner therefore argues that his guilty plea was not knowing and intelligent and, "had he known that the drug weight would not be calculated," he would not have pled guilty. *Id.* at 7.

Petitioner's argument fails to satisfy the *Strickland* performance prong. According to his affidavit, on March 31, 2023, Attorney Jones reviewed the Plea Agreement, Statement of Facts, Criminal Information, and Waiver of Indictment with Petitioner. Jones Aff. at 1–2. Petitioner instructed counsel to schedule a plea hearing as soon as possible, even after counsel informed Petitioner that he had not yet received discovery from the Government. *Id.* On April 21, 2023, during a second meeting with Petitioner, counsel reviewed the Criminal Information and proposed plea documents. *Id.* at 2. Petitioner stated he agreed with the documents and again instructed counsel to schedule a plea hearing, despite counsel's admission that he had not yet had an opportunity to look at the Government's discovery. *Id.*

Counsel received the lab report on April 27, 2023, which confirmed methamphetamine with a purity of 97.8% with an initial weight of 267 grams. *Id.* Counsel advised Petitioner of these results the next day and informed Petitioner that he "could not provide him with an exact drug weight at that time because [he] anticipated additional information would be forthcoming." *Id.* Counsel denies that he told Petitioner to "just plead guilty," and claims Petitioner was persistent

7

in his desire to do so. *Id.* Counsel further claims Petitioner signed the plea agreement with full knowledge that "there was no specific agreement as it related to the drug weight," and that it would be based upon his "relevant conduct." *Id.* at 3.

During the plea colloquy, Petitioner confirmed he received a copy of the Criminal Information and the Amended Information and fully discussed the charges with Attorney Jones. ECF No. 58 at 7–8. Petitioner affirmed he read the plea agreement, Attorney Jones fully explained it to him, and he signed and initialed each page of the agreement. *Id.* at 14–15. The Court asked Petitioner several times if he had sufficiently discussed the case with counsel, and if he was satisfied with his counsel's explanation of the facts and possible defenses to the charges. *Id.* at 18. The Court also ensured Petitioner's guilty plea was the product of his own choice and not of any coercion or threat. *Id.* at 17–18. The Court further explained to Petitioner that his recommended sentence would be based "on the actual conduct in which [he] engaged." *Id.* at 19. Petitioner affirmed that he understood this. *Id.* Finally, the Court explained to Petitioner that he would not be able to withdraw his guilty plea if dissatisfied with his sentence, and Petitioner affirmed his understanding of this fact. *Id.* at 21. The Court also asked if Petitioner agreed with the Statement of Facts, to which Petitioner replied "yes." *Id.* at 24–25. The Statement of Facts stated that the crystal methamphetamine had a "purity of 97.8%" and "an initial weight of over 200 grams." ECF No. 26 at 2.

The facts outlined above—including the fact that counsel successfully lowered Petitioner's drug weight, offense level, and guideline range prior to sentencing—demonstrate that Petitioner did not suffer from ineffectiveness of counsel due to a failure to investigate or challenge the methamphetamine's weight and purity.

### ii. *Failure to Withdraw Guilty Plea*

Petitioner claims counsel was ineffective for failing to seek a withdrawal of his guilty plea. Pet'r's Mot. at 8. Petitioner's claim rests on the allegation that the Government failed to prove the exact drug quantity, then "worked" with this Court to "make the drug weight fit a particular sentencing guideline range." *Id.* Petitioner's own skepticism of the lab results does not produce a sufficient justification for withdrawal of a guilty plea. In seeking withdrawal of a guilty plea, a petitioner has the burden of showing a "fair and just reason for withdrawal." A fair and just reason is "one that 'essentially challenges'" the fairness of a proceeding under Federal Rule of Criminal Procedure 11. *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000) (quoting *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995)).

Petitioner cannot establish that counsel's performance was deficient under *Strickland*. As discussed above, Petitioner was advised during the plea colloquy that his sentence guideline range would be based "in part, on the actual conduct in which [he] engaged," which "includes all of [his] conduct, not just the minimum conduct necessary to establish the offenses." ECF No. 58 at 19. Petitioner affirmed his understanding of how the guidelines would be calculated. *Id.* Additionally, Petitioner was advised that he would not be able to withdraw his guilty plea simply because he was dissatisfied with the guideline range. *Id.*

Petitioner's claim that counsel "disregarded [his] pleas to withdraw his guilty plea by argument and motion objections to the court" is contrary to counsel's affidavit testimony. Pet'r's Mot. at 8; Jones Aff. at 3. Attorney Jones advised Petitioner that he would have no absolute right to withdraw his plea, and he would have to present a fair and just reason for such withdrawal. Jones Aff. at 3. After receiving this information, Petitioner continued to insist on expediting sentencing proceedings. *Id.* Overall, Petitioner makes no clear argument as to why counsel should

9

have sought a withdrawal of his guilty plea, relying on mere conclusory statements (that he "asked counsel about the credibility of the government's witness[es] who calculated the weight," and "the government could not prove [the] drug quantity by a preponderance of the evidence"). Pet'r's Mot. at 8. These statements fail to establish how Petitioner was prejudiced by counsel's actions to warrant satisfying the *Strickland* prejudice prong.

### iii.   *Failure to Raise § 922(g)(1) Constitutional Argument*

Finally, Petitioner claims counsel was ineffective for failing to object to the constitutionality of 18 U.S.C. § 922(g)(1) as related to Count Two. Pet'r's Mot. at 9. Petitioner claims he asked counsel to make a constitutional claim and his requests were ignored. *Id.* In his affidavit, Attorney Jones claims he discussed the relevant statutes and case law with Petitioner, and Petitioner requested counsel to schedule a plea hearing. Jones Aff. at 4. In counsel's recollection of events, he discussed no constitutional claim with Petitioner, and he was not asked to do so. *Id.*

However, any constitutional argument brought by counsel on this ground would have been futile, as the Fourth Circuit has repeatedly upheld the constitutionality of § 922(g)(1). *See United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024) (holding § 922(g)(1) is facially constitutional because it "may constitutionally be applied in at least some 'set of circumstances'") (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)); *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) ("We now join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons . . . does not violate the Second Amendment."); *United States v. Moore*, 666 F.3d 313, 316–17 (4th Cir. 2012) (holding § 922(g)(1) is a constitutionally valid statute). Therefore, Petitioner cannot establish that counsel acted ineffectively or that he was prejudiced by counsel's failure to bring a constitutional challenge to

§ 922(g)(1).

### B. Lack of Jurisdiction Over § 922(g)(1) Charge

Petitioner argues that this Court "lacked jurisdiction" to convict him of violating 18 U.S.C. § 922(g)(1) because he had "never been [permanently] banned from possessing a firearm," and that he never "[consented] to be banned [from doing so] for life." Pet'r's Mot. at 11. "[T]he Second Amendment right to bear arms, like all other constitutional rights, is not absolute." *Moore*, 666 F.3d at 316. Courts in this circuit have repeatedly held that statutes prohibiting convicted felons from owning or possessing firearms are constitutional. *United States v. Jernigan*, 750 F. Supp. 3d 579, 584 (E.D. Va. 2024); *United States v. Sullivan*, 2024 WL 3540987, at *5 (E.D. Va. July 25, 2024); *United States v. Riley*, 635 F. Supp. 3d 411, 424 (E.D. Va. 2022).

### IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion to Vacate, or Correct a Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 64, is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this Final Order by

forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

The Court **DIRECTS** the Clerk to mail a copy of this Order to counsel for Petitioner and Respondent.

**IT IS SO ORDERED.**

Newport News, Virginia
April 24, 2025

Raymond A. Jackson
United States District Judge